UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**TIMOTHY BURNS,**
Plaintiff,

v.                                                                          Civil Action No. _____

**TOWN OF GRAND ISLAND,**
**ROBERT WESTFALL, individually and in his official capacity,**
**PETER MARSTON, individually and in his official capacity,**
**THOMAS DIGATI, individually and in his official capacity,**
Defendants.

---

### COMPLAINT AND JURY DEMAND

Plaintiff Timothy Burns, by and through his attorneys, The Law Office of Lindy Korn, Esq., for

his Complaint against Defendants, alleges as follows:

### I. INTRODUCTION

1. This is an action for employment discrimination, hostile work environment, retaliation, and

   constitutional violations arising under Title VII of the Civil Rights Act of 1964 ("Title

   VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, and the New York

   State Human Rights Law ("NYSHRL").

2. Plaintiff Timothy Burns was subjected to a prolonged and escalating pattern of

   discrimination and retaliation based on his sexual orientation and disability.

3. Defendants, acting individually and under color of state law, created, tolerated, and perpetuated a hostile work environment through repeated harassment, discriminatory treatment, disparate treatment, and retaliatory conduct.

4. Defendants further violated Plaintiff's constitutional rights, including his right to equal protection and his right to be free from retaliation for protected speech and conduct.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices described herein occurred within the Western District of New York.

## III. PARTIES

8. Plaintiff Timothy Burns is an individual residing in Grand Island, New York.

9. Defendant Town of Grand Island (the "Town") is a municipal employer and political subdivision of the State of New York that employed Plaintiff during all times relevant to this action.

10. Defendant Robert Westfall was, at all relevant times, employed by the Town as Town Engineer and acted as Plaintiff's supervisor and as a person exercising authority over Plaintiff's terms and conditions of employment.

2

11. Defendant Peter Marston was, at all relevant times, employed by the Town as Town Supervisor and acted as a final policymaker for the Town with respect to employment matters and the treatment of Plaintiff.

12. Defendant Thomas Digati was, at all relevant times, a Town Councilmember and exercised authority and influence over Plaintiff's employment conditions and treatment in the workplace.

13. At all relevant times, the Individual Defendants acted under color of state law and within the scope of their actual or apparent authority.

## IV. ADMINISTRATIVE EXHAUSTION

14. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

15. The EEOC issued a Dismissal and Notice of Rights dated March 12, 2026.

16. Plaintiff commenced this action within ninety (90) days of receiving the EEOC's Notice of Right to Sue.

17. Plaintiff has satisfied all administrative prerequisites and conditions precedent to suit.

## V. FACTUAL ALLEGATIONS

### Employment Background

18. Plaintiff has worked in the Town's wastewater department since approximately 2008.

19. On or about March 11, 2008, Plaintiff was hired as a summer helper at the Town's wastewater treatment plant. He returned in that capacity for the following two summers.

20. On or about March 7, 2011, Plaintiff was hired full-time as a plant operator.

21. During the years that followed, Plaintiff performed his job competently and was recognized for his work ethic, initiative, and improvements to plant operations and the control room.

22. On or about September 16, 2020, Plaintiff successfully passed the 3A Wastewater Treatment Plant Operator examination and thereafter held the highest-grade operator license among the Town's shift operators other than then-Senior Operator Ian James.

23. On or about March 19, 2022, the Town officially began operating the wastewater treatment plant under Plaintiff's 3A operator license, and Plaintiff later became Senior Operator with responsibility for plant operations, process control, and regulatory compliance.

**Protected Status**

24. Plaintiff is gay and is therefore a member of a protected class under Title VII and the NYSHRL.

25. Plaintiff is also an individual with a disability within the meaning of the ADA and the NYSHRL.

26. Defendants had knowledge of Plaintiff's disability through workplace records, observable circumstances, and Plaintiff's use of a handicap placard.

27. By at least 2024, Defendants were aware that Plaintiff used a handicap placard at work and that his condition was being aggravated by workplace stress, hostility, and retaliation in the workplace.

**Early Discriminatory Conduct**

28. Beginning no later than 2020, Plaintiff was subjected to discriminatory treatment after it became known in the workplace that he is gay.

29. In or around the summer of 2020, then-Senior Operator Ian James abruptly ceased communicating with Plaintiff, deliberately avoided him in the workplace, refused to enter shared spaces while Plaintiff was present, and isolated Plaintiff in a work environment where communication and coordination were essential to safe plant operations.

30. Coworkers noticed the change in James's conduct and questioned Plaintiff about it.

31. On or about August 14, 2021, after Plaintiff married his husband, a coworker mentioned the marriage in the workplace, and Ian James allegedly responded by making vomiting noises.

### Promotion, Licensing, and Differential Treatment

32. In late 2020 and into 2021, Plaintiff sought training and advancement into the Senior Operator role.

33. Plaintiff was qualified for the position and held a 3A license, while another favored employee, Ken Kinderman, did not hold the required license and repeatedly failed to obtain it.

34. Despite Plaintiff's qualifications, the Town delayed advancing Plaintiff while giving further opportunities to less-qualified employees.

35. On or about October 31, 2021, Ian James's license expired, and the plant continued operating during a period in which it did not have a properly licensed Senior Operator in charge.

36. On or about November 4, 2021, the New York Water Environment Association notified James that his license had expired and was no longer valid.

37. On or about January 25, 2022, Plaintiff was told that his promotion to Senior Operator would be placed on the next Town Board agenda, but the promotion was delayed.

38. On or about March 7, 2022, Plaintiff's promotion was finally placed on the Town Board agenda, effective March 19, 2022.

39. The Town's handling of this licensing and promotion period reflected disparate treatment and laid groundwork for later retaliation and hostility directed at Plaintiff.

**Laboratory Problems, Reporting, and Differential Treatment of Joseph Leggett**

40. During 2023 and continuing into 2025, Plaintiff repeatedly raised concerns about laboratory noncompliance, missed testing, deficient documentation, and misconduct by Joseph Leggett, the Town's Junior Sanitary Chemist.

41. On or about September 19, 2023, the Department of Health conducted an Environmental Laboratory Approval Program audit of the Town laboratory and found numerous deficiencies.

42. On or about September 28, 2023, Leggett failed four out of six tests in the EPA-administered DMR-QA study.

43. Plaintiff reported these failures and compliance concerns to Town officials, including Defendant Westfall.

44. On or about October 2, 2023, Plaintiff and Working Crew Chief John Podlucky met with the Town Board in executive session regarding concerns that Leggett was engaging in wage theft through excessive lunches and overtime claims.

45. Plaintiff's concerns regarding Leggett's conduct, missed testing, overtime, and documentation issues were repeatedly minimized or ignored.

46. On or about January 17, 2024, during the plant's SPDES permit renewal process, Plaintiff discovered that records for multiple mercury tests were missing and that Leggett could not account for the missing testing.

47. Plaintiff reported the mercury issue, which caused the Town to investigate.

48. On or about May 21, 2024, Defendant Marston issued a counseling memorandum to Plaintiff regarding the mercury-testing issue, even though Plaintiff had reported the problem and did not have supervisory authority over Leggett during all relevant periods.

49. On the same date, Defendant Marston also issued a counseling memorandum to Defendant Westfall concerning deficient supervision of the wastewater treatment plant.

50. On or about June 13, 2024, the Town issued a written warning to Leggett regarding missing mercury tests and ELAP-related deficiencies but did not terminate him.

51. The Town's handling of Leggett's misconduct was materially more lenient than its treatment of Plaintiff.

**Harassment and Homophobic / Disability-Based Conduct in 2024**

52. From approximately August 2024 through December 2024, Plaintiff's office was located directly adjacent to the laboratory.

53. Because of the building's construction, Plaintiff could clearly hear conversations occurring in the laboratory and repeatedly overheard Leggett making disparaging remarks about him during speakerphone calls with Defendant Westfall, Defendant Marston, and Defendant Digati.

54. These remarks included overtly homophobic slurs and repeated attacks on Plaintiff's competence.

7

55. None of those individuals corrected the conduct, rebuked the remarks, or took steps to stop the harassment.

56. On or about August 26, 2024, during a Town Board executive session, Defendant Digati allegedly stated, in substance, "The only reason you're helping Tim is because you want him to fuck you in the ass," in reference to Plaintiff.

57. This comment was blatantly homophobic, degrading, and discriminatory.

58. Another Town employee who was present was reportedly disturbed enough by the remark to attempt to make a complaint, but the matter was not meaningfully addressed.

59. During or around September 2024, the hostile work environment and stress caused Plaintiff's disability-related symptoms to worsen.

60. Plaintiff resumed more regular medication use, experienced worsening physical symptoms including severe nosebleeds, and began using his handicap placard regularly at work because of the effect workplace conditions were having on him.

**September–November 2024 Retaliation and Overt Harassment**

61. On or about September 26, 2024, Plaintiff copied the Town Board on an email chain concerning permit issues and compliance concerns at the plant.

62. In response, Defendant Westfall accused Plaintiff of insubordination.

63. In an email dated September 26, 2024, Westfall expressly stated that he viewed Plaintiff's copying of the Town Board as "an act of insubordination."

64. The accusation of insubordination was retaliatory and intended to deter Plaintiff from reporting plant issues and regulatory concerns to Town leadership.

65. On or about October 3, 2024, Defendant Marston convened a meeting concerning regulatory violations and plant issues, but rather than focusing on solutions, spent substantial time directing criticism toward Plaintiff.

66. During that meeting or in the surrounding period, Leggett criticized Plaintiff's competence and stated that Plaintiff was "unequipped" to manage the plant.

67. On or about October 30, 2024, Plaintiff overheard a conversation in the laboratory in which Leggett referred to Plaintiff as "that fucking faggot" while complaining about Plaintiff's use of a handicap placard.

68. Defendant Westfall was present or participating in the conversation and did not correct or discipline Leggett.

69. During the same incident, Westfall and/or Leggett discussed having Plaintiff's car towed and made comments in substance asking, "What can we get him on next?" and indicating an intent to "nail" Plaintiff on alleged plant issues.

70. Also on or about October 30, 2024, Westfall informed Plaintiff that Plaintiff could no longer charge invoices to the laboratory budget, thereby interfering with Plaintiff's ability to address laboratory deficiencies and perform his job.

71. On or about November 4, 2024, Plaintiff submitted a written complaint to Defendant Digati and the full Town Board accusing Westfall of discrimination based on Plaintiff's sexuality and use of a handicap placard and requesting a meeting to discuss the harassment.

72. No meaningful corrective action followed that complaint.

73. On or about November 12, 2024, Plaintiff again overheard Leggett use the slur "fucking faggot" during a laboratory phone conversation, and the person on the other end of the call did not intervene.

9

**2025 Escalation: False Accusations, Testing Irregularities, and Investigation**

74. On or about January 31, 2025, Leggett installed a new pH probe that produced readings that were severely out of calibration.

75. Plaintiff independently checked the results by obtaining comparison testing and reported the issue to Leggett and Westfall, but no meaningful corrective action was taken.

76. On or about February 3, 2025, the Town Board removed Westfall as department head and assigned his department-head responsibilities to Plaintiff.

77. Despite Plaintiff's substantially increased duties, the Town did not provide corresponding compensation, and Plaintiff was paid less than a subordinate.

78. On or about February 19, 2025, a small sludge spill occurred on plant property that remained entirely on-site and did not require outside spill reporting.

79. Nevertheless, on or about February 24, 2025, Westfall sent Plaintiff an accusatory email demanding documentation that the spill had been reported, falsely asserting that it had entered a storm sewer.

80. On the same date, Leggett escalated the false narrative by making a false report to the DEC spill line claiming that Plaintiff had discharged sludge into a storm sewer leading to a nearby creek and wildlife preserve.

81. The DEC investigated and confirmed that the spill had remained on-site, had not entered any stormwater infrastructure, and posed no environmental threat.

82. The false spill accusation nevertheless exposed Plaintiff to reputational harm, regulatory scrutiny, and risk to his professional license.

83. During the same general period, Leggett was found to have falsified settleable solids tests and other laboratory results.

84. On or about March 3, 2025, after meeting with Defendant Digati regarding Leggett's testing practices, Plaintiff overheard Leggett state, in substance, "Why doesn't the Town do anything about that asshole parking in the handicap spot," referring to Plaintiff.

85. Digati did not correct or discipline the comment.

86. On or about March 4, 2025, Plaintiff directed Leggett to begin a weekly 5-day BOD test in a way that would allow timely reading and avoid conflict with training.

87. Contrary to instructions, Leggett mishandled the test, resulting in a reportable lab error on the DMR and creating potential regulatory exposure for Plaintiff as the licensed operator.

88. On or about March 7, 2025, a fecal coliform result exceeded permit limits, and when Plaintiff raised concerns about sample handling and integrity, Defendant Digati responded defensively and attacked Plaintiff rather than addressing the underlying issue.

89. On or about March 11, 2025, Plaintiff sought outside review of plant and laboratory data, which reinforced concerns that results associated with Leggett were inconsistent and unreliable.

90. On or about March 17, 2025, Leggett reported a chlorine residual result that was scientifically implausible based on plant operations and chemical usage.

91. Plaintiff investigated, reran the testing under normal conditions, and observed results within normal limits, further supporting Plaintiff's concerns that the original result had been mishandled or falsified.

92. On or about March 18, 2025, the Town suspended Leggett without pay pending final action based on confirmed misconduct.

93. On or about March 31, 2025, rather than terminate Leggett outright, the Town allowed him to enter into a resignation agreement that preserved benefits and provided neutral reference language.

**Lab Cleanup, Red Notebook, Property Handling, and Retaliatory Investigation**

94. Following Leggett's suspension and resignation, Plaintiff assumed expanded responsibilities, including laboratory management and corrective efforts to bring the lab into compliance.

95. During late March and early April 2025, the laboratory was cleaned out and rehabilitated.

96. During that process, employees discovered large quantities of non-work-related personal property in the lab and file cabinets, including calendars marked with women's names and other personal materials.

97. On or about April 8, 2025, Defendant Digati contacted Plaintiff regarding Leggett's desire to retrieve personal property.

98. Plaintiff advised that arrangements had already been coordinated through appropriate channels and that Leggett's belongings had been separated and secured.

99. On or about April 9, 2025, after hours, Digati assisted Leggett in retrieving property from the plant without the previously discussed police-facilitated handoff.

100.    During that visit, Digati requested a red notebook believed to be among the materials taken from the laboratory file cabinet area.

101.    The red notebook was located and identified through text-message exchanges, and Digati promptly returned to retrieve it.

102. On or about April 11, 2025, Defendant Marston came to the plant with an empty box and demanded that Plaintiff fill it with additional property allegedly missing from Leggett's belongings, including an iPod, boots, and other items.

103. Plaintiff responded that all of Leggett's property had already been included in the press-room pile and that many of the claimed items were not present or were likely Town property.

104. The allegations concerning missing property were exaggerated, accusatory, and part of a broader effort to portray Plaintiff as dishonest or untrustworthy after Plaintiff had exposed misconduct by Leggett.

105. On or about April 24, 2025, Digati told Plaintiff's union president, Cody Clarke, in substance, "Tim's just not a people person," thereby minimizing and dismissing Plaintiff's harassment and hostile work environment complaints.

106. Around the same period, Plaintiff learned that a Town investigation had been opened focusing not on the discrimination and retaliation he had reported, but on whether Plaintiff had somehow mishandled or distributed information relating to the red notebook and the list of names.

107. On or about April 27, 2025, Digati posted publicly seeking one-time lawn cutting, and Joseph Leggett responded that he had sent Digati a message.

108. On or about April 29, 2025, Leggett was observed mowing Digati's lawn, further reinforcing concerns that Digati maintained an unusually close or protective relationship with Leggett.

109.     On or about May 9, 2025, after Plaintiff advised that he was retaining legal counsel, Plaintiff received a text message stating, in substance, that there would be "no discipline" as a result of the Town's investigation and thanking Plaintiff for being honest.

110.     That message confirmed both the existence of the investigation and its retaliatory focus on Plaintiff.

111.     On or about May 13, 2025, Digati, Jose Garcia, and Town Attorney Peter Godfrey conducted a Zoom meeting with Plaintiff, Plaintiff's union president, and a labor-relations representative.

112.     During that meeting, Town officials aggressively questioned Plaintiff about the laboratory rehabilitation, the handling of Leggett's property, the red notebook, and the meaning of the names found in it.

113.     Plaintiff was repeatedly pressed to speculate about the notebook and its contents.

114.     When Plaintiff stated that the so-called "history" with Leggett included repeated harassment, homophobic slurs, and ridicule concerning Plaintiff's handicap placard, the tone of the meeting changed abruptly.

115.     After the meeting, in the parking lot, Digati made an inappropriate sexualized remark to Plaintiff concerning lubricant and what Digati claimed to have learned about Leggett's sexual behavior.

**Pressure Concerning Plaintiff's Grievance and Continuing Retaliation**

116.     On or about March 28, 2025, Plaintiff, through his union, filed a grievance regarding the reassignment of department-head responsibilities to him without proper compensation.

117.    On or about May 17, 2025, a Town official communicated to at least one coworker, in substance, that if employees expected to get anything in contract negotiations, they needed to tell Plaintiff to drop his grievance.

118.    This statement was coercive, retaliatory, and designed to isolate Plaintiff and discourage the exercise of his rights.

119.    Throughout this period, Plaintiff was subjected to heightened scrutiny, false accusations, retaliatory investigations, and dismissal of his complaints while more culpable employees were protected or treated leniently.

**Harm to Plaintiff**

120.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, anxiety, reputational injury, worsening physical symptoms related to disability, and damage to the terms, conditions, and privileges of his employment.

121.    Plaintiff also suffered professional harm, including risk to his 3A operator license and interference with his ability to perform his regulatory responsibilities without harassment and retaliation.

**VI. FIRST CAUSE OF ACTION**
**Title VII Discrimination (Sex / Sexual Orientation)**
**Against Defendant Town of Grand Island**

122.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

123.    Plaintiff is a member of a protected class based on sexual orientation.

15

124.     Defendant Town discriminated against Plaintiff because of sex, including sexual orientation, by subjecting him to disparate treatment in the terms and conditions of employment.

125.     Such discrimination included, among other things, inferior treatment, harassment, diminished support, interference with job duties, retaliatory scrutiny, and more favorable treatment for similarly situated employees outside Plaintiff's protected class.

126.     Defendant Town's conduct violated Title VII.

## VII. SECOND CAUSE OF ACTION
### Title VII Hostile Work Environment
### Against Defendant Town of Grand Island

127.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

128.     Plaintiff was subjected to severe or pervasive harassment because of sex, including sexual orientation.

129.     The hostile conduct included repeated homophobic slurs, sexually charged insults, humiliation, exclusion, and demeaning treatment by coworkers, supervisors, and Town officials.

130.     The harassment was unwelcome and materially altered the terms and conditions of Plaintiff's employment.

131.     Defendant Town knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

132.     Defendant Town's conduct violated Title VII.

16

## VIII. THIRD CAUSE OF ACTION
### Title VII Retaliation
### Against Defendant Town of Grand Island

133.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

134.     Plaintiff engaged in protected activity by reporting discrimination, harassment, retaliation, plant compliance issues, and workplace misconduct, and by pursuing a grievance concerning his treatment and duties.

135.     After Plaintiff engaged in protected activity, Defendant Town subjected him to materially adverse actions, including accusations of insubordination, retaliatory investigations, hostile scrutiny, false accusations, interference with job duties, and retaliatory exclusion.

136.     There is a causal connection between Plaintiff's protected activity and the materially adverse actions taken against him.

137.     Defendant Town's conduct violated Title VII.

## IX. FOURTH CAUSE OF ACTION
### ADA Discrimination
### Against Defendant Town of Grand Island

138.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

139.     Plaintiff is an individual with a disability within the meaning of the ADA.

140.     Defendant Town discriminated against Plaintiff because of disability by subjecting him to adverse treatment, ridicule, differential treatment, and interference with the terms and conditions of employment.

141.     Defendant Town's conduct violated the ADA.

17

### X. FIFTH CAUSE OF ACTION
### ADA Hostile Work Environment
### Against Defendant Town of Grand Island

142. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

143. Plaintiff was subjected to harassment based on disability, including ridicule and hostility related to his handicap placard and disability-related limitations.

144. The disability-based harassment was unwelcome and materially affected the terms and conditions of Plaintiff's employment.

145. Defendant Town knew or should have known of the disability-based harassment and failed to stop it.

146. Defendant Town's conduct violated the ADA.

### XI. SIXTH CAUSE OF ACTION
### ADA Retaliation
### Against Defendant Town of Grand Island

147. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

148. Plaintiff engaged in protected activity under the ADA by complaining of disability-based discrimination and harassment.

149. Defendant Town retaliated against Plaintiff for engaging in such protected activity.

150. Defendant Town's conduct violated the ADA.

### XII. SEVENTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Equal Protection
### Against Westfall, Marston, and Digati

151. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

152. The Individual Defendants acted under color of state law.

153.    Defendants intentionally treated Plaintiff differently because of his sexual orientation and disability.

154.    Defendant Westfall directly participated in discriminatory conduct, condoned harassment, and retaliated against Plaintiff.

155.    Defendant Marston knowingly permitted discrimination and retaliation to continue and participated in adverse actions against Plaintiff.

156.    Defendant Digati directly engaged in discriminatory and retaliatory conduct and reinforced the hostile work environment.

157.    The conduct of the Individual Defendants deprived Plaintiff of the equal protection of the laws in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

### XIII. EIGHTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – First Amendment Retaliation
### Against Westfall, Marston, and Digati

158.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

159.    Plaintiff engaged in protected speech and conduct by reporting discrimination, harassment, workplace misconduct, plant compliance issues, and public/regulatory concerns.

160.    Defendants took adverse actions against Plaintiff that would deter a person of ordinary firmness from engaging in such protected activity.

161.    Defendants' retaliatory actions were motivated, at least in part, by Plaintiff's protected speech and conduct.

162.    The conduct of the Individual Defendants violated Plaintiff's rights under the First Amendment and 42 U.S.C. § 1983.

## XIV. NINTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Municipal Liability (Monell)
### Against Defendant Town of Grand Island

163.	Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

164.	The constitutional violations described herein were caused by policies, customs, usages, practices, or deliberate indifference attributable to Defendant Town.

165.	Town policymakers, including Marston and Digati, knew of and ratified the discriminatory and retaliatory conduct directed at Plaintiff.

166.	Defendant Town failed to adequately prevent, investigate, and remedy discrimination and retaliation, and such failure was a moving force behind Plaintiff's injuries.

167.	Defendant Town is therefore liable under 42 U.S.C. § 1983.

## XV. TENTH CAUSE OF ACTION
### NYSHRL Discrimination
### Against All Defendants

168.	Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

169.	Defendants discriminated against Plaintiff based on sexual orientation and disability in violation of N.Y. Exec. Law § 296.

170.	The discriminatory treatment included disparate treatment, denial of equal workplace support, hostile treatment, interference with job duties, and more favorable treatment for similarly situated employees.

171.	Defendants' conduct violated the NYSHRL.

## XVI. ELEVENTH CAUSE OF ACTION
### NYSHRL Hostile Work Environment
### Against All Defendants

20

172.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

173.    Defendants subjected Plaintiff to a hostile work environment based on sexual orientation and disability.

174.    The harassment included repeated homophobic slurs, sexualized insults, disability-based ridicule, intimidation, and retaliatory hostility.

175.    Under the NYSHRL, such conduct subjected Plaintiff to inferior terms, conditions, and privileges of employment.

176.    Defendants' conduct violated the NYSHRL.

## XVII. TWELFTH CAUSE OF ACTION
### NYSHRL Retaliation
### Against All Defendants

177.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

178.    Plaintiff engaged in protected activity by reporting discrimination, harassment, retaliation, and workplace misconduct.

179.    Defendants retaliated against Plaintiff because of that protected activity.

180.    Defendants' conduct violated the NYSHRL.

## XVIII. THIRTEENTH CAUSE OF ACTION
### NYSHRL Aiding and Abetting
### Against Westfall, Marston, and Digati

181.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

182.    Under N.Y. Exec. Law § 296(6), it is unlawful for any person to aid, abet, incite, compel, or coerce discriminatory conduct.

21

183. Defendant Westfall aided and abetted discrimination and retaliation by participating in harassment, failing to stop known discriminatory conduct, and engaging in retaliatory acts against Plaintiff.

184. Defendant Marston aided and abetted discrimination and retaliation by allowing unlawful conduct to continue, failing to remedy known harassment, and participating in retaliatory treatment.

185. Defendant Digati aided and abetted discrimination and retaliation by directly engaging in discriminatory and retaliatory conduct and reinforcing the hostile work environment.

186. The Individual Defendants are individually liable under the NYSHRL.

## XIX. DAMAGES

187. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer emotional distress, humiliation, anxiety, physical symptoms, reputational harm, loss of enjoyment of life, and economic harm.

188. Plaintiff is entitled to compensatory damages, back pay, front pay, emotional distress damages, attorneys' fees where authorized, costs, equitable relief, and such other relief as the Court deems just and proper.

189. Plaintiff is also entitled to punitive damages against the Individual Defendants to the extent permitted by law.

## XX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award the following relief:

A. A declaration that Defendants' conduct violated Plaintiff's rights under federal and state law;

B. Compensatory damages in an amount to be determined at trial;

C. Back pay, front pay, lost benefits, and other economic damages;

D. Emotional distress damages;

E. Punitive damages against the Individual Defendants to the extent permitted by law;

F. Costs, disbursements, and attorneys' fees to the extent authorized by law;

G. Injunctive and equitable relief as appropriate; and

H. Such other and further relief as the Court deems just and proper.

## XXI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

***

Respectfully Submitted,

*Plaintiff Timothy Burns*
By his Attorneys

Dated: June 9, 2026
        Buffalo, New York

**LAW OFFICE OF LINDY KORN, PLLC**

Lindy Korn-Myers
*Attorney for Plaintiff*
Law Office of Lindy Korn, PLLC
535 Washington Street, 9th Floor
Buffalo, NY 14203
Phone: (716) 856-5676
lkorn@lindykorn.com

24